L & R DISTRIBUTING, INC., a corporation, et al., Respondents,

v.

MISSOURI DEPARTMENT OF REVE-NUE and James R. Spradling, Director of Revenue, Appellants.

No. 58925.

Supreme Court of Missouri, Division 2.

Oct. 13, 1975.

Motion for Rehearing or Transfer Denied Dec. 8, 1975.

Carp & Morris, Gary Morris, Clayton, Stein & Seigel, Hyman G. Stein, Charles Alan Seigel, St. Louis, for plaintiffs-respondents, L & R Distributing, Inc., et al.

John C. Danforth, Atty. Gen., Clarence Thomas, Asst. Atty. Gen., Jefferson City, for defendants-appellants.

HENRY I. EAGER, Special Commissioner.

This action involves the validity of Revised Rule No. 49 of the Revenue Department which, for the first time, construed

§ 144.020.1(2) of the Sales and Use Tax Law as imposing the tax upon the gross receipts of coin-operated devices such as pinball machines.[1] The applicable portion of this statute is as follows: "A tax equivalent to three percent of the amount paid for admission and seating accommodations or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events"; that subdivision has been in its identical form since 1937. Plaintiffs are the owners and operators of various pinball machines and other coin-operated devices. They filed this declaratory judgment action seeking to invalidate the Revised Rule, for an injunction, and for the return of sales taxes paid under protest since May 1, 1974. Their theory is, as stated, that the statute does not impose a tax upon these proceeds and that the Rule is arbitrary and in violation of the statute; defendants, by answer, admitted all formal allegations, admitted that they had collected no sales tax on such proceeds until (after) April 30, 1974, but asserted that the Revised Rule embodied a correct construction of the statute, and that the tax was properly collected. The issue does not require a more elaborate review of the pleadings.

We have jurisdiction because the construction of a Revenue Law is required. The parties stipulated all the necessary facts, except those already admitted in the pleadings. They are, in substance, as follows: that the plaintiffs own and operate pinball machines and other coin-operated devices in St. Louis and St. Louis County, which are placed in "restaurants, confectionaries, bowling alleys, hotels, motels, bus stations, airports and other similar places * * *"; that they receive a percentage of the gross receipts; that in 1937 the Attorney General rendered an opinion which is incorporated into the stipulation as an exhibit; that the Revenue Department has issued Rules construing the statutes "and in so doing promulgated Rule No. 49 (issued in 1972 as a successor to prior rules dating back to 1934) which specifically exempted receipts derived from pinball and other slot machines (which provision, or similar provisions, was included in the said prior rules dating back to 1939)"; that copies of such Rules were attached as exhibits; that the Department did not attempt to collect a tax on such proceeds from 1937 to 1974, nor was such its practice, and that, on information, the same was true from 1933 to 1937; that effective May 1, 1974, Revised Rule No. 49 was promulgated under which defendants are attempting to collect sales taxes upon such proceeds for the use of such facilities; that on May 10, 1974, the Attorney General issued his opinion No. 68, a copy of which is incorporated into the stipulation; this upheld collection of the tax on fees paid for the *use* of facilities such as billiard tables, pool tables, bowling alleys "and the like"; that defendants have demanded such taxes since May 1, 1974, and plaintiffs and others have paid such taxes under protest—pursuant to § 144.700.

In the stipulation there are statements also concerning certain legislative bills which were introduced in 1939 and 1941. We prefer to discuss these in more detail later from our own examination of the legislative files. The parties stipulated that we may take judicial notice of the legislative history which, of course, we might do anyway.

The trial court filed its "Order, Judgment and Decree" granting to plaintiffs the relief prayed, and also filed an extended memorandum opinion. It declared the Revised Rule to be void insofar as it purported to tax the proceeds in question, adjudged that the statute does not impose such a tax, enjoined collection, and ordered a refund of the amounts collected. It would be somewhat superfluous to review the memorandum opinion, since it covers much of the same ground which we are required to cover here. It shows, however, a considered and studious review of the legal issues.

---

1. Statutory references will be to RSMo 1969, V.A.M.S., unless otherwise stated.

It is appropriate here to review the legislative history of this part of the Sales Tax Law. The Act was first enacted in 1933 and extended only for two years; it taxed: "Sales of admission tickets, cash admissions, charges and fees to places of amusement, games and athletic events." Laws Extra Session, 1933–1934, p. 157. In 1935 the wording of the corresponding subdivision was changed to a tax on: " * * * the amount paid, for admission and seating accommodations to any place of amusement, entertainment or recreation, games and athletic events." Laws 1935, p. 415. In 1937 the subsection was changed to read: "A tax * * * of the amount paid, for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events." Laws 1937, pp. 552–557. As will be noted, the words "*or fees paid to, or in*" were added to the 1937 Act in that subdivision. From 1937 to this time the wording has remained as it was in 1937. No one claimed that a tax was thus imposed on the proceeds of coin-operated machines until 1974. In 1937 the Attorney General issued his opinion No. 68 in which he ruled that no sales tax was imposed by this statute on fees for *participation* in "Billiard, Pool, Bowling or any other game for which the participants pay a fee or charge * * for the use of such equipment * * *." While this opinion did not specifically mention coin-operated devices, it seems to have been recognized as applicable to them, until 1974. On May 10, 1974, the then Attorney General withdrew the former opinion and ruled, on the same wording of the statute, that the term "fees" was broad enough to include charges paid for the *use of* "billiard, pool, bowling, and similar amusement or recreational facilities * * *." Neither the opinion nor (apparently) the request for the opinion mentioned coin-operated machines.

In 1939 legislation was introduced in the House which would have extended the Sales Tax to cover fees paid to *participate* in any amusement, entertainment, recreation, game or athletic event. A Committee Substitute for two of these bills (containing the extension) was adopted by the House, but was reported unfavorably by a Senate Committee and failed of adoption in the Senate. In 1941 a bill was introduced in the House which would have *specifically* imposed the Sales Tax upon proceeds from *coin-operated devices, including pinball machines.* That bill passed the House. The Senate amended the bill by *striking out* all that portion applying to coin-operated devices, including pinball machines (and certain other forms of amusement) and adopted the bill as amended; the House concurred in the bill as amended. Thus, the legislature has twice rejected amendments which would have extended the statute, once—to those who "participate" in amusements, games, etc., and once—to the proceeds of pinball and other coin-operated devices, specifically. There has been no change in the pertinent portion of the Act since 1937. The earlier Sales Tax Acts were effective for two years only, and consequently were completely re-enacted (with minor changes) on eleven occasions.

The trial court determined that the statute was ambiguous and that its administrative construction over a period of many years and the legislative construction (in rejecting the amendments in 1939 and 1941), might and should be controlling. Defendants insist here that the statute clearly and plainly imposes the tax; therein they argue in detail the supposed fallacies in the Attorney General's opinion of 1937. We are not so much concerned with that opinion as we are with our own construction of the statute. Defendants also argue at considerable length that the addition of the words "or fees paid to, or in" in the 1937 Act (which they say the Attorney General ignored) must be construed as intending some extension of the Act over and above a mere charge for "admission and seating accommodations to any place of amusement," and that the Act thus clearly taxes the proceeds in question. As a matter of fact, the 1933 Act included a tax on "charges and fees to

places of amusement * * * " (Laws Extra Session, 1933–1934, p. 157). In the *1935 Act* (Laws 1935, p. 411) the word "fees" was not included in the subsection (Sec. 2(b)) imposing the tax, but it was included in the definitions under "Sale at retail" (Sec. 1(e)(1)) which embraced "Sales of admission tickets, cash admissions, charges *and fees* to places of amusement" etc. In its entire context we cannot say that it was the intention of the legislature in 1935 to omit "fees" paid to places of amusement, or that the 1937 Act was an affirmative extension of the tax. The use of the word "fees" in the 1937 Act was not new; and, as a matter of fact, there can be little, if any, difference between "fees" and "charges" (as used in the 1933 Act). It would not appear that the legislature intended a new subject of taxation by the use of the word "fees" in 1937, especially in view of the requirement that they be paid to or in *places of amusement,* etc., as we note in the next paragraph. The words "or in" added in 1937 would seem only intended to include any amount paid after admission to a place of amusement; that is not determinative here.

In any event, the use of the words "fees" and "or in" become of little importance when we consider the words immediately following. The statute, since 1937 and now, requires that the "amount" or "fees" be "paid to, or in *any place of amusement, entertainment or recreation, games and athletic events*"; two elements are essential,—that there be fees or charges and that they be paid *in or to* a place of amusement, etc. Defendants argue, somewhat casually, that the introduction of a coin-operated machine converts that place, any place it seems, into a "place of amusement or entertainment," since *it* "provides entertainment." We do not believe that the legislature intended any such broad and strained construction of a "place of amusement." To us, the contrary seems much more reasonable,—that a hotel lobby, a restaurant, a motel, a bus station or an airport is *not,* within normal contemplation, a place of amusement or entertainment, and that it

is not converted into such by the installation of a pinball machine. The machines are movable and frequently are moved. Thus, we are convinced that, since the fees must have been paid *in a place of amusement,* etc., the statute certainly does not clearly and plainly (as defendants say) impose the tax. While we are inclined to feel that the wording of the statute plainly *excludes* the tax, we shall give defendants the benefit of the doubt and consider the statute as though it were ambiguous, as did the trial court. As already indicated, we do not accept the argument that the 1937 opinion of the Attorney General created the ambiguity. By its very terms, as already indicated, the statute either expressly excluded the tax, *or* it was ambiguous; an Attorney General's opinion does not change the status of a statute. If, perchance, the opinion had any effect on the administrative construction (which is not shown), we certainly cannot assume that it had any effect upon the later legislative action in twice rejecting affirmatively amendments to the Act which would have extended it as now sought. And defendants had the option at any time to demand the tax, and thus require a judicial construction, as they did 37 years later in 1974.

Defendants do not really suggest that the administrative and legislative constructions are not to be considered and given great weight in the construction of an ambiguous statute. To the effect that they are, see: *State ex rel. Harline v. Public Service Commission,* 343 S.W.2d 177 (Mo. App.1960, administrative construction); *Lemasters v. Willman,* 281 S.W.2d 580 (Mo. App.1955, administrative construction); *State ex inf. Anderson v. St. Louis County,* 421 S.W.2d 249 (Mo. banc 1967, administrative construction); *State ex rel. Smithco Transport Co. v. Public Service Commission,* 307 S.W.2d 361 (Mo.App.1957, administrative construction); *Foremost Dairies, Inc. v. Thomason,* 384 S.W.2d 651 (Mo. banc 1964, administrative construction); *American Bridge Co. v. Smith,* 352 Mo. 616, 179

S.W.2d 12 (1944, legislative interpretation); *State ex rel. Howard Electric Co-Op. v. Riney,* 490 S.W.2d 1 (Mo.1973, legislative interpretation); *In re Gerling's Estate,* 303 S.W.2d 915 (Mo.1957, legislative interpretation); *Three Rivers Junior College District v. Statler,* 421 S.W.2d 235 (Mo. banc 1967, administrative and legislative construction). Numerous other citations might be added, but this principle is well established. Defendants cite cases to the effect that the previous interpretations should not be given weight *if* the construction of the statute is clearly erroneous and if the statute is clear and plain on its face. *City of St. Louis v. Crowe,* 376 S.W.2d 185 (Mo.1964); *Lemasters,* supra; *State ex rel. Bell v. Phillips Petroleum Co.,* 349 Mo. 360, 160 S.W.2d 764 (1942); *U. S. v. Missouri Pacific Railroad Co.,* 278 U.S. 269, 49 S.Ct. 133, 73 L.Ed. 322 (1929). The answer to that contention here, as we have already stated, is that the statute does *not* clearly impose the tax on coin-operated machines, but, on the contrary, if it *is* clear, it is clear in excluding the tax. We have considered it as ambiguous, however, and, so considered, we do give weight to the prior interpretations. If the statute had been plain and clear in defendants' favor, it would certainly not have been interpreted to the contrary over a period of 37 years, both by the Revenue Department and the legislature. See *Mummert, Sheriff v. Thunderbird Lanes et al.,* 107 Ariz. 244, 485 P.2d 814 (1971).

■■ Those interpretations, both administrative and legislative, strongly support the view that such a tax is not imposed, and thus more firmly convince us that the legislature did not *intend* to impose the tax on coin-operated machines. The ascertainment of that intent is our ultimate goal. And no one is better qualified to find and state that intent than the legislature itself. For at least 37 years the Revenue Department claimed no such tax and, in fact, promulgated Rules excluding the tax. In two separate sessions the legislature *rejected* amendments which would have imposed the tax; that action is much more decisive than

mere non-action, and clearly shows the legislature's view of its own intent. Our own view of the statute is that it does not tax the proceeds of coin-operated machines, and this view is so strongly reinforced that we have no hesitancy in ruling, as we now do, that the Act does not impose a sales tax on pinball or other coin-operated machines.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.